IN THE UNITED STATES BANKRUPTCY COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| EQUIPMENT ACQUISITION RESOURCES, INC., | ) ) | |
|           Debtor. | ) | Bk. No. 09 B 39937 |
| | ) | Chapter 11 |
| | ) | Hon. John H. Squires |
| EQUIPMENT ACQUISITION RESOURCES, INC., | ) ) | |
|           Plaintiff, | ) | |
| | ) | |
|     v. | ) | Adversary No. 10-00099 |
| | ) | |
| UNITED STATES OF AMERICA, INTERNAL REVENUE SERVICE, | ) ) | |
| | ) | |
|           Defendants. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
|           Third-Party Plaintiff, | ) | |
| | ) | |
|     v. | ) | |
| | ) | |
| MARK W. ANSTETT, MARTHA J. ANSTETT, SHELDON G. PLAYER, and DONNA L. MALONE, | ) ) ) ) | |
| | ) | |
|           Third-Party Defendants. | ) | |

**UNITED STATES' AMENDED ANSWER (ADDING THIRD-PARTY COMPLAINT)**

Defendant United States of America, named and sued as United States of America,

Internal Revenue Service, responds to Plaintiff's Complaint and sets forth its Third-Party

1

Complaint against the above Third-Party Defendants as follows:[1]

## ANSWER

### FIRST DEFENSE

The adversary complaint is deficient under Fed. R. Civ. P. 8 and 9, and fails to state a claim upon which relief may be granted.

### SECOND DEFENSE

Count II of the adversary complaint is barred by the sovereign immunity of the United States of America for two reasons. First, a creditor holding an unsecured claim of the kind described in 11 U.S.C. § 544(b) could not avoid a fraudulent transfer to the United States under applicable *non-bankruptcy law* under similar circumstances. Second, under state law, the creditor of a debtor who fraudulently transfers money to the creditor of a relative or an affiliate in payment of the relative's or affiliate's debt to such creditor, where the creditor is unaware of the fraud, cannot recover from the creditor of the relative or the affiliate. Since the IRS was without knowledge of the fraud when it accepted payment by the debtor for the tax debts of the Third-Party Defendants, there is no waiver of sovereign immunity for a state-law fraudulent transfer action against the United States. While § 544 is listed in § 106(a)(1), the statutory waiver of sovereign immunity must be strictly construed with all ambiguities resolved in favor of immunity.

### THIRD DEFENSE

The Court lacks subject matter jurisdiction over Count II of the adversary complaint.

---

[1] This pleading amends the original answer by adding the Third-Party Complaint and also making minor amendments to the original answer.

## FOURTH DEFENSE

The adversary complaint must be dismissed to the extent that it was commenced after the applicable statute of limitations.

## FIFTH DEFENSE

To the extent that Plaintiff prevails on the adversary complaint, the United States is entitled to restitution from the Third-Party Defendants and unless restitution is granted, it would be improper to hold the United States liable.

## SIXTH DEFENSE

Plaintiff cannot recover from the United States, as the Internal Revenue Service was not the initial transferee, but rather at most, an immediate or mediate transferee of the initial transferee within the meaning of 11 U.S.C. § 550(a)(2), which took for value, in good faith, and without knowledge of the voidability of the transfer.  (See also Ninth Defense below.)

## SEVENTH DEFENSE

The Internal Revenue Service is not a sueable entity.

## EIGHTH DEFENSE

The Debtor is an S Corporation under the Internal Revenue Code the income of which is taxed to its shareholders, and the payments at issue were not fraudulent to the extent that they were made in the ordinary course of business to pay the tax attributable to pass-through items.

## NINTH DEFENSE

To the extent that the United States is an initial transferee (which is not admitted but disputed), it would be more appropriate or equitable on the facts of this case to hold liable the persons "for whose benefit such transfer[s] w[ere] made," within the meaning of 11 U.S.C. § 550(a)(1)  – those being the Third-Party Defendants – and inappropriate to impose liability on

the United States. The failure of the Debtor in Possession to join those parties to the original complaint and thereby enable this Court to exercise appropriate discretion as to which party to hold liable under § 550(a)(1), unless cured, will entitle the United States to a judgment of dismissal on grounds of equitable estoppel. (See also footnote 2 to the Third-Party Complaint below.)

## TENTH DEFENSE

For its tenth defense, Defendant responds to each of Plaintiff's allegations as follows:

1. On or about October 23, 2009, the Debtor filed a Voluntary Petition (the "Petition") under Chapter 11 of the United States Bankruptcy Code with the United States Bankruptcy Court for the Northern District of Illinois. The Debtor is an Illinois Corporation, organized and existing under the laws of the state of Illinois, which formerly operated in several buildings near its headquarters at 555 S. Vermont Street, Palatine, Illinois.

**ANSWER:** Admits the allegations contained in the first sentence of paragraph 1, and lacks knowledge and information sufficient to form a belief as to the truth of the allegations in the second sentence.

2. The IRS is a federal governmental unit with its principal office located, on information and belief, at 500 North Capitol Street NW, Washington, DC 20226. The IRS also has a branch in Chicago, Illinois located at 230 S. Dearborn Street, Chicago, IL 60604.

**ANSWER:** Admits that the Internal Revenue Service is a bureau within the United States Department of Treasury and has offices at the addresses alleged, and denies the remaining allegations contained in paragraph 2.

## II.   JURISDICTION AND VENUE

3.   This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334, and internal operating procedure 15(a) of the Federal District Court for the Northern District of Illinois because this action is related to the underlying bankruptcy case of Equipment Acquisition Resources, Inc. which is pending before this Court and is a civil proceeding arising under § 548 the United States Bankruptcy Code.  This Court also has jurisdiction over this adversary proceeding pursuant to Section 105(a) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 7001(1).

**ANSWER:**   Defendant admits that, if this Court has jurisdiction, it arises under 28 U.S.C. §§ 157 and 1334, and internal operating procedure 15(a) of this district court, and denies the remaining allegations contained in paragraph 3.

4.   This is a core proceeding under 28 U.S.C. § 157.  If for any reason this court determines that all or any portion of this proceeding is non-core, the Debtor consents to the entry of a final order by this Court.

**ANSWER:**   Defendant admits that an action under 11 U.S.C. §§ 548 and 550 is a core proceeding under 28 U.S.C. § 157(b)(2)(H) and that Plaintiff consents to entry of final orders and judgments by the bankruptcy judge for non-core proceedings, and denies the remaining allegations contained in paragraph 4.

5.   The chapter 11 bankruptcy case is pending before this Court.  Accordingly, venue of this adversary proceeding is proper in this Court under 28 U.S.C. § 1409(a).

**ANSWER:**   Admits the allegations contained in paragraph 5.

### III. BACKGROUND FACTS

6. Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtor continues to manage its financial affairs as a debtor in possession. No trustee, examiner or committee has been appointed in its chapter 11 case.

**ANSWER:** Admits the allegations contained in paragraph 6.

7. Prior to commencement of its chapter 11 case, the Debtor purported to be a market maker in the semiconductor manufacturing equipment sales and servicing industry. The Debtor also purported to perform processing services for companies in the semiconductor industry.

**ANSWER:** Lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 7.

8. In the period from at least September, 2007 until October 8, 2009, the Debtor engaged in a massive fraud by which it sold equipment at inflated prices and leased the equipment back from various lenders. The Debtor misrepresented the value of the equipment and pledged certain equipment multiple times to secure the financing. During this period of time, one or more of the officers, directors, and shareholders of the Debtor knew that the Debtor was engaged in the fraud, and knew that the Debtor was, in effect, not a real, functioning company. On information and belief, the Debtor paid substantial amounts of money to its board of directors and officers during this time.

**ANSWER:** Lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 8.

9.    On October 8, 2009, after it became apparent that the Debtor engaged in fraudulent activity, the members of the Debtor's board of directors and its officers, including Donna Malone ("Malone") and Mark Anstett ("Anstett"), resigned. The shareholders elected William A. Brandt, Jr. as the sole member of the board of directors and as the Chief Restructuring Officer (the "CRO"). The CRO filed the bankruptcy petition to manage the Debtor's assets for the benefit of all creditors.

**ANSWER:**    Lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 9.

10.    The CRO's investigation has determined that on nine occasions from October 15, 2007 until December 3, 2008, the Debtor made transfers to the United States Treasury to pay taxes of individual owners and officers of the Debtor, including but not limited to Sheldon Player, Malone and Anstett, along with Anstett's wife. The aggregate amount of the payments was $4,737,261.36. Exhibit A to this Complaint sets forth the $2,412,973.36 of payments made within the two year period prior to the bankruptcy filing. Exhibit B to the Complaint sets forth one payment, in the amount of $2,324,288.00, made on October 15, 2007, just outside the two year period.

**ANSWER:**    Admits that Exhibit A is attached to the Complaint and that it includes a document entitled "Transfers within two years prior to bankruptcy filing." Admits that Exhibit B is attached to the Complaint and that it includes a document entitled "Transfers between two years and four years prior to the bankruptcy filing." Admits that a payment of $97,293.87 was made to the Internal Revenue Service on April 15, 2008 for Anstetts' account for the 2007 federal income tax year. Admits that a payment of $446,750.96 was made to the Internal

7

Revenue Service on April 15, 2008 for Player's and Malone's account for the 2007 federal income tax year.  Admits that a payment of $22,293.87 was made to the Internal Revenue Service on April 18, 2008 for Anstetts' account for the 2008 federal income tax year.  Admits that a payment of $25,000.00 was made to the Internal Revenue Service on June 23, 2008 for Anstetts' account for the 2008 federal income tax year.  Admits that a payment of $25,000.00 was made to the Internal Revenue Service on September 14, 2008 for Anstetts' account for the 2008 federal income tax year.  Admits that a payment of $136,280.95 was made to the Internal Revenue Service on October 20, 2008 for Anstetts' account for the 2007 federal income tax year.  Admits that a payment of $1,652,646.00 was made to the Internal Revenue Service on October 19, 2008 for Player's and Malone's account for the 2007 federal income tax year.  Admits that a payment of $7,707.71 was made to the Internal Revenue Service on December 8, 2008 for Anstetts' account for the 2007 federal income tax year.  Admits that a payment of $2,324,288 was made to the Internal Revenue Service on October 21, 2007 for Player's and Malone's account for the 2006 federal income tax year.  Lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in paragraph 10.

11.    The Debtor did not receive any value for making the payments contained on Exhibit A and Exhibit B.  Only Player, Malone, Anstett, and Anstett's wife received any benefit from the Debtor making those payments.

**ANSWER:**    Denies the allegations contained in paragraph 11.

## COUNT 1

### (Fraudulent Transfer - 11 U.S.C. §§ 548 and 550)

1-11. The Debtor restates and realleges Paragraphs One (1) through Eleven (11) of the Allegations Common to All Counts as Paragraphs One (1) through Eleven (11) of this Count I.

**ANSWER:** Defendant incorporates herein its answers to paragraphs 1 through 11, above.

12. The transfers identified on Exhibit A were made by the Debtor to the IRS through the U.S. Treasury within the two year period prior to the Debtor's bankruptcy filing.

**ANSWER:** Admits that payments identified on Exhibit A were made within the two year period prior to the commencement of the Debtor's bankruptcy case, and lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in paragraph 12.

13. The Debtor received less than reasonably equivalent value for the transfers identified on Exhibit A.

**ANSWER:** Denies the allegations contained in paragraph 13.

14. On the dates of the transfers listed on Exhibit A, the Debtor either was insolvent, or was engaged in a business for which any property remaining with the Debtor was unreasonably small capital, or intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

**ANSWER:** Lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 14.

15.    The Debtor is entitled to avoid the transfers on Exhibit A pursuant to 11 U.S.C. § 548(a)(1)(B) and recover those transfers pursuant to 11 U.S.C. § 550.

**ANSWER:**    Denies the allegations contained in paragraph 15.

## COUNT II

### (Fraudulent Transfer - 11 U.S.C. § 544 and 740 ILCS 160/5(a)(2))

1-15.    EAR re-alleges paragraph 1-15 of the Allegations Common to All Counts as paragraphs 1-15 of this Count II.

**ANSWER:**    Defendant incorporates herein its answers to paragraphs 1 through 15 above.

16.    The transfers on Exhibit A and B were made by the Debtor to the IRS through the U.S. Treasury within a four year period prior to the Debtor's bankruptcy filing.

**ANSWER:**    Admits that payments identified on Exhibits A and B were made within the four year period prior to the commencement of the Debtor's bankruptcy case, and lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in paragraph 16.

17.    The Debtor did not receive reasonably equivalent value in exchange for the transfers identified on Exhibits A and B.

**ANSWER:**    Denies the allegations contained in paragraph 17.

18.    The Debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or

10

transaction. In the alternative, the Debtor intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they came due.

**ANSWER:** Lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 18.

19. Pursuant to 11 U.S.C. § 544(b), the Debtor may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of Chapter 11 of the United States Code or that is not allowable only under section 502(e) of Chapter 11 of the United States Code.

**ANSWER:** Admits that the statement of law contained in paragraph 19 is a correct statement of what is set forth in § 544(b) but denies that the provision applies to where applicable non-bankruptcy law does not permit a such a creditor to commence an action against the United States. (See also Second Defense above.)

20. The Debtor may avoid the transfers identified on Exhibit A and B pursuant to 11 U.S.C. § 544 (b) and the Illinois Fraudulent Transfer Act, 740 ILCS 160/5(a)(2).

**ANSWER:** Denies the allegations contained in paragraph 20.

WHEREFORE the Defendant United States of America demands judgment dismissing Plaintiff's action, and such other and further relief as the court deems just and proper, and its costs in the action.

**UNITED STATES' THIRD-PARTY COMPLAINT**

Defendant United States of America (named and sued as United States of America, Internal Revenue Service), with the authorization of a delegate of the Secretary of the Treasury and under the direction of the Attorney General, pursuant to 26 U.S.C. § 7401, hereby asserts this action against Mark W. Anstett, Martha J. Anstett, Sheldon G. Player, and Donna L. Malone for restitution or unjust enrichment and the imposition of a constructive trust, and for its Third-Party Complaint alleges as follows:

Jurisdiction

1. This Court has jurisdiction over the complaint by Equipment Acquisitions Resources, Inc. against the United States of America on the basis of 28 U.S.C. §§ 1334(b) and 157(a) and internal operating procedure 15(a) of this district court.

2. This action is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E), (H), and (O).

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

4. This Third-Party Complaint asserts that Mark W. Anstett, Martha J. Anstett, Sheldon G. Player, and Donna L. Malone ("Third-Party Defendants") are liable to the United States of America for any liability that Third-Party Defendants may owe to Plaintiff Equipment Acquisition Resources, Inc.

5. The claim asserted in this Third-Party Complaint arises out of the same transactions as those of the original complaint and thus falls within this Court's subject matter jurisdiction under 28 U.S.C. §§ 1334(b) and 157(a) and Fed.R.Civ.P. 14 made applicable by Bankruptcy Rule 7014.

Background Facts

6. The United States restates and realleges paragraphs 1 through 5.

7.      On April 15, 2008, Mark W. Anstett caused Debtor to issue a check, drawn on Debtor's bank account, to the United States Treasury in the amount of $97,293.87 for Anstetts' account for the 2007 federal income tax year.

8.      On April 15, 2008, Sheldon G. Player caused Debtor to issue a check, drawn on Debtor's bank account, to the United States Treasury in the amount of $446,750.96 for Player's and Malone's account for the 2007 federal income tax year.

9.      On April 18, 2008, Mark W. Anstett caused Debtor to issue a check, drawn on Debtor's bank account, to the United States Treasury in the amount of $22,293.87 for Anstetts' account for the 2008 federal income tax year.

10.     On June 23, 2008, Mark W. Anstett caused Debtor to issue a check, drawn on Debtor's bank account, to the United States Treasury in the amount of $25,000.00 for Anstetts' account for the 2008 federal income tax year.

11.     On September 14, 2008, Mark W. Anstett caused Debtor to issue a check, drawn on Debtor's bank account, to the United States Treasury in the amount of $25,000.00 for Anstetts' account for the 2008 federal income tax year.

12.     On October 20, 2008, Mark W. Anstett caused Debtor to issue a check, drawn on Debtor's bank account, to the United States Treasury in the amount of $136,280.95 for Anstetts' account for the 2007 federal income tax year.

13.     On October 19, 2008, Mark W. Anstett caused Debtor to issue a check, drawn on Debtor's bank account, to the United States Treasury in the amount of $1,652,646.00 for Player's and Malone's account for the 2007 federal income tax year.

14.     On December 8, 2008, Mark W. Anstett caused Debtor to issue a check, drawn on Debtor's bank account, to the United States Treasury in the amount of $7,707.71 for Anstetts'

account for the 2007 federal income tax year.

15. On October 21, 2997, Sheldon Player caused Debtor to issue a check, drawn on Debtor's bank account, to the United States Treasury in the amount of $2,324,288.00 for Player's and Malone's account for the 2006 federal income tax year.

16. On March 23, 2009, the IRS issued a refund to Sheldon G. Player and Donna L. Malone in the amount of $213,598.69 for the 2007 federal income tax year.

17. On April 15, 2009, Mark W. Anstett and Martha J. Anstett elected to have an overpayment of $101,385.82 from the 2008 federal income tax year to be applied to their income tax liability for the 2009 federal income tax year.[2]

18. On or about October 23, 2009, Debtor filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code with the United States Bankruptcy Court for the Northern District of Illinois.

19. On January 20, 2010, Debtor commenced this adversary proceeding against the United States seeking (1) to recover, pursuant to 11 U.S.C. §§ 548 and 550, $2,412,973.36 of the tax payments that Third-Party Defendants caused Debtor to make to the United States Treasury; and (2) to recover, pursuant to 11 U.S.C. §§ 544 and 740 ILCS 160/5(a)(2), $2,324,288.00 of the tax payments that Third-Party Defendants caused Debtor to make to the United States Treasury.

---

[2] The United States has asked the Internal Revenue Service to freeze the credit and not permit a further refund pending this litigation and again states its position that the Trustee should amend his complaint to name the Third-Party Defendants directly, which may enable the Trustee to secure a judgment binding the Third-Party Defendants directly to a determination that they must give up the creditors to their 2009 tax returns. If for any reasons, the Trustee's failure to do so results in the United States not being able to do so, the Trustee should be equitably estopped from pursuing the relief sought against the United States.

### Count 1- Unjust Enrichment/Restitution

20. The United States restates and realleges paragraphs 1 through 19.

21. If the Court determines that the $2,099,396.96, which was paid through two checks drawn on Debtor's bank account for Player's and Malone's federal income tax year liabilities for 2007, was a fraudulent transfer as to the United States and that the United States is an initial transferee of the $2,099,396.96, and if it also rejects the United States' position that under § 550(a)(1) it is appropriate to impose liability on the person for whose benefit the transfer was made under these facts, then the United States will be required to repay $2,099,396.96 to Debtor's estate for that period, despite having already refunded $213,598.69 to Player and Malone in accordance with 26 U.S.C. § 6402 without any knowledge that the payment it received was a fraudulent transfer and having already parted with the transferred funds.

22. To the extent the United States is held liable to the Debtor in Possession with respect to the payments made for the benefit of Player and Malone, it would be it would be unjust, unconscionable, and inequitable for said Third-Party Defendants to retain any refunds received from the Internal Revenue Service and Player and Malone should be held liable to the United States for restitution or unjust enrichment.

23. If the Court determines that the $72,293.87, which was paid through three checks drawn on Debtor's bank account for Anstetts' federal income tax year liabilities for 2008, was a fraudulent transfer as to the United States and that the United States is an initial transferee of the $72,293.87, and if it also rejects the United States' position that under § 550(a)(1) it is appropriate to impose liability on the person for whose benefit the transfer was made under these facts, then the United States will be required to repay $72,293.87 to Debtor's estate for that period, despite the overpayment of $101,385.82 that the Anstetts have elected to apply to the

2009 federal income tax liability.

24. To the extent the United States is held liable to the Debtor in Possession with respect to the payments made for the benefit of Anstett, it would be it would be unjust, unconscionable, and inequitable for said Third-Party Defendants to retain the benefit of any credit to their 2009 federal income tax liability traceable to such payments, and any such credit should be eliminated and the 2008 year overpayment refunded to the Debtor in Possession in satisfaction of the United States' liability to the Debtor in Possession (or if that liability has already been paid by the United States, then such overpayment should be forfeited to the United States).

25. To the extent the United States is held liable to the Debtor in Possession with respect to any other of the payments made for the benefit of any Third-Party Defendant that were applied to satisfy in whole or party such Third-Party Defendants' income tax liabilities, it would be it would be unjust, unconscionable, and inequitable for said Third-Party Defendants to retain the benefit of any credit to any such tax liability. The United States is therefore entitled to reverse such credits and revive as unpaid tax assessments a corresponding portion of their income tax liabilities, and thereupon collect the unpaid taxes from the Third-Party Defendants according to law.

WHEREFORE, Third-Party Plaintiff United States requests this Court, that if Debtor prevails in its adversary proceeding against the United States, it:

    A. Impose the equitable remedy of a constructive trust on any and all wrongfully acquired property attributable to the refunds issued as a result of the 2007 tax payment of $2,099,396.96 for Player and Malone and the 2008 tax payment of $72,293.87 for the Anstetts for the benefit of Equipment Acquisition Resources,

16

      Inc. and/or the United States;

B.    Order that the Internal Revenue Service may reverse credits to any tax accounts of the Third-Party Defendants that satisfied in whole or party their tax liabilities, and revive and then collect their income tax liabilities to the extent that the United States is held liable to the Debtor in Possession.

C.    Find Third-Party Defendants liable to the United States in restitution for unjust enrichment and order the Anstetts to turn over any refunds from the 2007 federal income tax year, and Player and Malone are not entitled to any credit of any overpayments from the 2008 federal income tax year to the United States;

D.    If Debtor prevails in its adversary proceeding against the United States, determine that the United States, in equity, has a paramount claim to all payments made by Third-Party Defendants for the tax years at issue and reverse all tax credits made by checks drawn on Debtor's bank account, returning Debtor and United States to the status quo before the transfers.

E.    Grant any such further relief the Court deems just and proper.

                    Respectfully submitted,

                    JOHN A. DiCICCO
                    Acting Assistant Attorney General
                    Tax Division

                    */s/ Patrick B. Gushue*
                    PATRICK B. GUSHUE
                    Trial Attorney, Tax Division
                    U.S. Department of Justice
                    Post Office Box 55
                    Ben Franklin Station
                    Washington, D.C. 20044
                    Telephone: (202) 307-6010
                    Email: Patrick.B.Gushue@usdoj.gov

CERTIFICATE OF SERVICE

    IT IS HEREBY CERTIFIED that service of the foregoing UNITED STATES' ANSWER has been made upon the following by depositing a copy in the United States mail, postage prepaid, this 5th day of April, 2010:

    Barry A. Chatz
    George P. Apostolides
    Robert A. McKenzie
    Arnstein & Lehr LLP
    120 S Riverside Plaza
    Suite 1200
    Chicago, Illinois 60606

    */s/ Patrick B. Gushue*
    PATRICK B. GUSHUE
    Trial Attorney, Tax Division
    U.S. Department of Justice
    Post Office Box 55
    Ben Franklin Station
    Washington, D.C. 20044
    Telephone: (202) 307-6010