# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy No. 09 B 39937 |
| | ) | Chapter 11 |
| EQUIPMENT ACQUISITION | ) | Judge John H. Squires |
| RESOURCES, INC., | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| EQUIPMENT ACQUISITION | ) | Adversary No. 10 A 00099 |
| RESOURCES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| INTERNAL REVENUE SERVICE, | ) | |
| SHELDON PLAYER, DONNA | ) | |
| MALONE, MARK ANSTETT, and | ) | |
| MARTHA ANSTETT, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This matter comes before the Court on the motion of defendant United States of America (the "United States"), on behalf of the Internal Revenue Service (the "IRS"), to dismiss Count IV of the first amended complaint of debtor-plaintiff Equipment Acquisition Resources, Inc. (the "Debtor") pursuant to Federal Rule of Civil Procedure 12(b)(1) or, alternatively, for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) (both made applicable by Fed. R. Bankr. P. 7012(b)). For the reasons set forth herein, the Court denies the motion and orders the United States to disgorge 37.5 percent of the

-2-

$2,324,288.00 payment made to the IRS by the Debtor on October 15, 2007, pursuant to the parties' settlement agreement approved by the Court on February 1, 2011.

## I. JURISDICTION

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. The matter falls within the Court's core jurisdiction under 28 U.S.C. §§ 157(b)(2)(A), (H), and (O). Additionally, the Court has jurisdiction to determine whether it has jurisdiction over Count IV of the first amended complaint. *See, e.g.*, *U.S. Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 79 (1988); *Flores-Leon v. INS*, 272 F.3d 433, 437 (7th Cir. 2001).

## II. BACKGROUND

Prior to the commencement of its bankruptcy case, the Debtor was an Illinois corporation operating in the semiconductor manufacturing equipment sales and servicing industry. (First Am. Compl. ¶¶ 1, 7.) Organized as a subchapter S corporation, the Debtor itself was not subject to income taxation; rather, any income or loss of the company was taxable on a pro rata basis to the Debtor's shareholders. (*See* Def. Br. in Supp. of Mot. to Dismiss at 2 (*citing* 26 U.S.C. § 1366)).

According to the complaint, from September 2007 to October 2009, certain officers and agents of the Debtor engaged in "a massive fraud" by selling equipment at inflated prices, leasing the equipment back, misrepresenting the value of the equipment, and pledging

-3-

certain pieces of equipment multiple times to various creditors in order to secure financing. (First Am. Compl. ¶ 8.)  On October 8, 2009, after the fraud was discovered, the Debtor's officers and directors resigned.  (*Id.* ¶ 9.)  Subsequently, the corporation's shareholders elected William A. Brandt, Jr. ("Brandt") as both the sole member of the board of directors and the Debtor's chief restructuring officer.  (*Id.*)

On October 23, 2009, Brandt filed on behalf of the Debtor a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  (*Id.* ¶¶ 1, 9; *see* Bankr. Case No. 09-39937, Dkt. No. 1.)  Thereafter, on July 15, 2010, the Court approved the Debtor's second amended plan of liquidation, pursuant to which Brandt became the Debtor's plan administrator.  (First Am. Compl. ¶ 10; *see* Bankr. Case No. 09-39937, Dkt. No. 322.)   In that capacity, Brandt conducted an investigation which revealed that over the period October 15, 2007 to December 3, 2008, the Debtor made nine transfers to the IRS totaling $4,737,261.36 in payment of the taxes of the Debtor's individual officers and shareholders.[1]  (First Am. Compl. ¶ 11.)  Eight of the transfers were made within the two-year period prior to the filing of the petition.  (*Id.* ¶ 11 & Ex. A.)  A single payment of $2,324,288.00 was made on October 15, 2007, just outside the two-year period.  (*Id.* ¶ 11 & Ex. B.)

On January 20, 2010, the Debtor filed a complaint against the United States, seeking to recover all nine transfers.  (*See* Adv. Case No. 10-00099, Dkt. No. 1.)  The complaint originally contained two counts.  Count I sought avoidance and recovery of the eight tax

---

[1]  The nine transfers listed in Exhibits A and B to the Debtor's first amended complaint total $4,737,260.66.  Despite the slight discrepancy between this figure and the one alleged in paragraph 11 of the complaint, the amount of the transfer at issue is indisputably $2,324,288.00. (*See* First Am. Compl. ¶ 11 & Ex. B.)

-4-

payments made in the two-year period prior to the bankruptcy filing pursuant to §

548(a)(1)(B) and § 550 of the Code, 11 U.S.C. §§ 548(a)(1)(B) and 550. Count II sought

avoidance and recovery of all nine tax payments, including the October 15, 2007 payment,

pursuant to § 544(b) of the Code, 11 U.S.C. § 544(b), and § 5(a)(2) of Illinois' Uniform

Fraudulent Transfer Act (the "UFTA"), 740 Ill. Comp. Stat. 160/5(a)(2) (West 2008).

About ten months later, on December 1, 2010, the Debtor filed an amended

complaint, which included counts against both the United States and the individual officers

and shareholders whose tax liabilities were paid by the Debtor. (*See* Adv. Case No. 10-

00099, Dkt. No. 50.) Count II against the United States, seeking avoidance and recovery of

all nine tax payments pursuant to both § 544(b) of the Code and § 5(a)(2) of the UFTA,

appears as Count IV in the amended complaint. In its amended answer filed on January 13,

2011, the United States asserted ten defenses, the second of which reads as follows:

> Count IV of the first amended adversary complaint is barred
> by the sovereign immunity of the United States of America
> for two reasons. First, a creditor holding an unsecured claim
> of the kind described in 11 U.S.C. § 544(b) could not avoid
> a fraudulent transfer to the United States under applicable
> *non-bankruptcy law* under similar circumstances. Second,
> under state law, the creditor of a debtor who fraudulently
> transfers money to the creditor of a relative or an affiliate in
> payment of the relative's or affiliate's debt to such creditor,
> where the creditor is aware of the fraud, cannot recover from
> the creditor of the relative or the affiliate. Since the IRS was
> without knowledge of the fraud when it accepted payment by
> the debtor for the tax debts of the Third-Party Defendants,
> there is no waiver of sovereign immunity for a state-law
> fraudulent transfer action against the United States. While §
> 544 is listed in § 106(a)(1), the statutory waiver of sovereign
> immunity must be strictly construed with all ambiguities
> resolved in favor of immunity.

-5-

(Am. Answer at 3 (emphasis in original); *see* Adv. Case No. 10-00099, Dkt. No. 59.)

On February 1, 2011, the Court dismissed all counts against the individual taxpayers and approved a settlement agreement reached by the parties (the "Agreement"), whereby all but one of the nine transfers were settled. (*See* Bankr. Case No. 09-39937, Dkt. Nos. 382, 425; Adv. Case No. 10-00099, Dkt. No. 68.) The one that remains is the transfer of $2,324,288.00, made on October 15, 2007, more than two years prior to the filing of the petition. (*See* Adv. Case No. 10-00099, Dkt. No. 68 at ¶ 4.) Pursuant to the Agreement, the United States will disgorge 37.5 percent of this transfer unless it is able to prevail on its asserted defense of sovereign immunity. (*See* Bankr. Case No. 09-39937, Dkt. No. 382 at ¶ 7.) For purposes of the instant motion, there are no disputed facts. The sole issue is whether Count IV may be dismissed as a matter of law based on the United States' defense of sovereign immunity.

## III.  **STANDARDS OF REVIEW**

### A.    **Applicable Rules**

According to the United States, dismissal pursuant to Rule 12(b)(1) is sought in the first instance because the defense of sovereign immunity is jurisdictional. Alternatively, given the fact that it has already filed an answer to the Debtor's first amended complaint, the United States seeks judgment on the pleadings pursuant to Rule 12(c).

A motion under Rule 12(b)(1) requires dismissal of claims over which the court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1) (made applicable by Fed. R. Bankr. P. 7012(b)). Jurisdiction is the "'power to decide'" and must be conferred on a court in order

-6-

for that court to hear a case or controversy. *In re Dental Profile, Inc.*, No. 09 C 6160, 2010

WL 431590, at *1 (N.D. Ill. Feb. 1, 2010) (*quoting In re Chi., Rock Island & Pac. R.R. Co.*,

794 F.2d 1182, 1188 (7th Cir. 1986)).

In deciding a Rule 12(b)(1) motion to dismiss, a court must accept as true all well-

pleaded factual allegations in the complaint and draw reasonable inferences in favor of the

plaintiff. *Capitol Leasing Co. v. Fed. Deposit Ins. Corp.*, 999 F.2d 188, 191 (7th Cir. 1993).

When issues are jurisdictional, a court has the authority under Rule 12(b)(1) to consider

evidence beyond the pleadings. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942,

946 (7th Cir. 2003); *Berg v. eHome Credit Corp.*, No. 08 C 05530, 2011 WL 761486, at *1

(N.D. Ill. Feb. 25, 2011); *Baker Dev. Corp. v. Mulder (In re Mulder)*, 307 B.R. 637, 640 n.2

(Bankr. N.D. Ill. 2004). A plaintiff faced with a properly supported Rule 12(b)(1) motion

bears the burden of establishing that the jurisdictional requirements have been satisfied.

*Dental Profile*, 2010 WL 431590, at *1 (*citing Kontos v. U.S. Dep't of Labor*, 826 F.2d 573,

576 (7th Cir. 1987)); *see also Coglianese v. Feiwell*, No. 4:06-CV-19, 2008 WL 474213, at

*4 (N.D. Ind. Feb. 19, 2008) ("When a defendant moves for dismissal pursuant to 12(b)(1),

the plaintiff bears the heavy burden of demonstrating that the court has subject matter

jurisdiction.").

Rule 12(c), on the other hand, provides that "[a]fter the pleadings are closed–but

early enough not to delay trial–a party may move for judgment on the pleadings." Fed. R.

Civ. P. 12(c) (made applicable by Fed. R. Bankr. P. 7012(b)). Thus, the Rule permits a party

to move for judgment after the parties have filed the complaint and answer. *Moss v. Martin*,

473 F.3d 694, 698 (7th Cir. 2007). When deciding a motion for judgment on the pleadings,

-7-

a court may consider only the contents of the pleadings. *Alexander v. City of Chi.*, 994 F.2d 333, 335 (7th Cir. 1993). However, courts may also consider documents incorporated by reference in the pleadings and take judicial notice of matters of public record. *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991).

A motion for judgment on the pleadings is determined by the same standard applied to a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Id.*; *Thomason v. Nachtrieb*, 888, F.2d 1202, 1204 (7th Cir. 1989). As such, "Rule 12(c) motions are subject to the retooled pleadings standards announced by the Supreme Court in *Bell Atlantic Corp. v. Twombly*," 550 U.S. 544 (2007). *Raymond Prof'l Grp., Inc. v. William A. Pope Co. (In re Raymond Prof'l Grp., Inc.)*, Nos. 06-B-16748, 07-A-00639, 2008 WL 1752166, at *2 (Bankr. N.D. Ill. Apr. 9, 2008). Judgment on the pleadings is appropriate only if the moving party unequivocally establishes that there are no material issues of fact and that judgment on the pleadings is warranted by law. *Nat'l Fid. Life Ins. Co. v. Karaganis*, 811 F.2d 357, 358 (7th Cir. 1987); *A.D.E. Inc. v. Louis Joliet Bank & Trust Co.*, 742 F.2d 395, 396 (7th Cir. 1984).

For purposes of Rule 12(c) motions, all well-pleaded allegations contained in the nonmovant's pleadings are to be taken as true. *Gillman v. Burlington N. R.R. Co.*, 878 F.2d 1020, 1022 (7th Cir. 1989). In ruling on a motion for judgment on the pleadings, courts must view the facts in pleadings and all inferences drawn therefrom in a light most favorable to the nonmovant. *Flenner v. Sheahan*, 107 F.3d 459, 461 (7th Cir. 1997).

**B.   Applicable Statutory Provisions**

The doctrine of sovereign immunity prevents suits against federal and state

-8-

governmental bodies except when Congress has "unequivocally expressed" its consent to be

sued. *Liebersohn v. IRS (In re C.F. Foods, L.P.)*, 265 B.R. 71, 84 (Bankr. E.D. Pa. 2001)

(internal quotation omitted); 2 *Collier on Bankruptcy* § 106.01 at 106-3 (Alan N. Resnick

& Henry J. Sommer eds., 16th ed. 2011). Conveying such an unequivocal expression, §

106(a) abrogates the sovereign immunity of "governmental unit[s]" with respect to an

extensive list of enumerated provisions in the Code. The statute provides, in pertinent part,

as follows:

> (a) Notwithstanding an assertion of sovereign immunity,
> sovereign immunity is abrogated as to a governmental unit to
> the extent set forth in this section with respect to the
> following:
>
> > (1) Sections 105, 106, 107, 108, 303, 346,
> > 362, 363, 364, 365, 366, 502, 503, 505, 506,
> > 510, 522, 523, 524, 525, 542, 543, 544, 545,
> > 546, 547, 548, 549, 550, 551, 552, 553, 722,
> > 724, 726, 744, 749, 764, 901, 922, 926, 928,
> > 929, 944, 1107, 1141, 1142, 1143, 1146,
> > 1201, 1203, 1205, 1206, 1227, 1231, 1301,
> > 1303, 1305, and 1327 of this title.
> >
> > (2) The court may hear and determine any
> > issue arising with respect to the application of
> > such sections to governmental units.
> >             . . .
> > (5) Nothing in this section shall create any
> > substantive claim for relief or cause of action
> > not otherwise existing under this title, the
> > Federal Rules of Bankruptcy Procedure, or
> > nonbankruptcy law.

11 U.S.C. § 106(a).[2]

---

[2] Prior to amendment by the Bankruptcy Reform Act of 1994, Pub. L. No. 103-394,
108 Stat. 4106 (1994), § 106 read as follows:

-9-

Abrogation of a governmental unit's sovereign immunity includes all substantive provisions listed under § 106(a)(1), including § 544. At issue here is subsection (b)(1) of § 544, which expressly authorizes a trustee to avoid a transfer voidable under "applicable law" and provides, in relevant part, as follows:

> [T]he trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

---

(a) A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose.

(b) There shall be offset against an allowed claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.

(c) Except as provided in subsections (a) and (b) of this section and notwithstanding any assertion of sovereign immunity–,

(1) a provision of this title that contains "creditor", "entity", or "governmental unit" applies to governmental units; and

(2) a determination by the court of an issue arising under such a provision binds governmental units.

Act of Nov. 6, 1978, Pub. L. No. 95-598, § 106, 92 Stat. 2549 (1978). The amendment was intended to overrule two United States Supreme Court decisions, *Hoffman v. Connecticut Department of Income Maintenance*, 492 U.S. 96 (1989), and *United States v. Nordic Village, Inc.*, 503 U.S. 30 (1992), which held that former § 106(c) did not express with sufficient clarity Congress's intent to abrogate the sovereign immunity of both the federal government and the states. *Zazzali v. Swenson (In re DBSI, Inc.)*, Nos. 08-12687(PJW), 10-54649(PJW), 2011 WL 607442, at *2 (Bankr. D. Del. Feb. 11, 2011); *C.F. Foods*, 265 B.R. at 84 (*citing* the House Report for the Reform Act); *Field v. Montgomery Cnty., Md. (In re Anton Motors, Inc.)*, 177 B.R. 58, 63 (Bankr. D. Md. 1995); 2 *Collier on Bankruptcy, supra,* § 106.01 at 106-4.

-10-

11 U.S.C. § 544(b)(1). Under § 544(b)(1), the trustee has the rights of an unsecured creditor

to avoid transactions that can be avoided by such creditor under state law. *Leibowitz v.*

*Parkway Bank & Trust Co. (In re Image Worldwide, Ltd.)*, 139 F.3d 574, 576-77 (7th Cir.

1998); *see also In re Xonics Photochemical, Inc.*, 841 F.2d 198, 202 (7th Cir. 1988) (noting

that "[s]ection 544(b) in effect allows the trustee to use the applicable state's law of

fraudulent conveyances to set aside obligations incurred by the bankrupt"). In order to

proceed under § 544(b)(1), the trustee need not identify an unsecured creditor, as long as

such a creditor exists. *Image Worldwide*, 139 F.3d at 577; *In re Leonard*, 125 F.3d 543, 544

(7th Cir. 1997).

In this matter, the applicable state law under § 544(b)(1) is the Illinois UFTA. 740

Ill. Comp. Stat. 160/1 *et seq.* Section 5 of the UFTA addresses claims that arose before or

after the alleged fraudulent transfer and provides, in pertinent part, as follows:

> § 5. (a) A transfer made or obligation incurred by a debtor is
> fraudulent as to a creditor, whether the creditor's claim arose
> before or after the transfer was made or the obligation was
> incurred, if the debtor made the transfer or incurred the
> obligation:
>
> . . .
>
> > (2) without receiving a reasonably equivalent
> > value in exchange for the transfer or
> > obligation, and the debtor:
> >
> > > (A) was engaged or was
> > > about to engage in a business
> > > or a transaction for which the
> > > remaining assets of the debtor
> > > were unreasonably small in
> > > relation to the business or
> > > transaction; or

-11-

> (B) intended to incur, or
> believed or reasonably should
> have believed that he would
> incur, debts beyond his
> ability to pay as they became
> due.

740 Ill. Comp. Stat. 160/5(a)(2). Pursuant to § 5(a)(2) of the UFTA, a trustee may recover a transfer made by a debtor if the debtor did not receive a reasonably equivalent value in exchange for the transfer and was insolvent at the time of the transfer or became insolvent as a result of the transfer. *Id.*

## IV. DISCUSSION

The United States challenges the Court's jurisdiction over the Debtor's § 544(b) claim on the ground that it is immune from suit. At the heart of this matter is the proper interpretation of § 106(a)(1) and the interplay of that provision with § 544(b)(1).

In construing § 106(a)(1), the Court's role is to examine the statute in its entirety in order to discern the legislative intent, determine the objective that the statute aims to accomplish, and, upon ascertaining the legislature's intent, give it effect. *United States v. McDonald*, 453 F.3d 958, 960 (7th Cir. 2006); *In re Hellen*, 329 B.R. 678, 682 (Bankr. N.D. Ill. 2005). All of this should be done primarily by considering the statutory language, which is the best evidence of the statute's purpose. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989). "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992).

-12-

Accordingly, a court's interpretive task must begin with an examination of the statutory language itself. *Precision Indus., Inc. v. Qualitech Steel SBQ, L.L.C.*, 327 F.3d 537, 543-44 (7th Cir. 2003). Where a statute is unambiguous, courts must give effect to the plain meaning of the statutory language. *Manning v. United States*, 546 F.3d 430, 433 (7th Cir. 2008); *Boyd v. Ill. State Police*, 384 F.3d 888, 896 (7th Cir. 2004). Moreover, when the language is clear, there is no need to examine other indicia of legislative intent. *Newsom v. Friedman*, 76 F.3d 813, 816-17 (7th Cir. 1996). Rather, "the only legitimate function of the judiciary is to enforce the law as enacted by the legislature." *U.S. Fire Ins. Co. v. Barker Car Rental*, 132 F.3d 1153, 1156-57 (7th Cir. 1997).

To determine the intent of the drafters, courts must examine the entire statute. *McCammon v. Ind. Dep't of Fin. Insts.*, 973 F.2d 1348, 1353 (7th Cir. 1992). Indeed, statutory interpretation "is a holistic endeavor, and, at a minimum, must account for a statute's full text . . . [and] language[.]" *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 455 (1993) (citation omitted) (internal quotation omitted). Likewise, courts must construe statutes in the context of the entire statutory scheme and avoid rendering provisions extraneous, ambiguous, or redundant. *U.S. Fire Ins. Co.*, 132 F.3d at 1157; *In re Merchs. Grain, Inc.*, 93 F.3d 1347, 1353-54 (7th Cir. 1996).

Absent specific statutory definitions, words or terms in a statute are presumed to have their ordinary, common, and contemporary meaning, unless such a construction would defeat the intention of the drafters. *Ron Pair Enters.*, 489 U.S. at 242; *Precision Indus.*, 327 F.3d at 544 (*citing Walters v. Metro. Educ. Enters., Inc.*, 519 U.S. 202, 207 (1997)). Further, according to conventional rules of statutory construction, courts interpret words and phrases

-13-

in such a way as to avoid rendering them redundant, superfluous, or meaningless. *Merchs.*

*Grain,* 93 F.3d at 1353-54.

Finally, courts should seek to harmonize two potentially conflicting statutes in their

application, if possible, rather than find them to be in direct conflict necessitating a

determination of which one controls or preempts the other. *See generally Kohler Co. v.*

*Moen Inc.*, 12 F.3d 632, 642 (7th Cir. 1993). Where there is an irreconcilable conflict

between statutes, however, the earlier enacted law generally yields to the more recently

enacted one. *Quinn v. Gates*, 575 F.3d 651, 655 (7th Cir. 2009) (finding that "[t]o the extent

of incompatibility, an old rule generally yields to a new one"); *Firstar Bank, N.A. v. Faul*,

253 F.3d 982, 993 n.5 (7th Cir. 2001) (noting that the "classic judicial task of reconciling

many laws enacted over time, and getting them to make sense in combination, necessarily

assumes that the implications of a statute may be altered by the implications of a later

statute" (internal quotation omitted)); *United States v. Hampton (In re Hampton)*, 47 B.R.

47, 50 (Bankr. N.D. Ill. 1985) (stating that "[w]hen there is a conflict between statutes, the

later enacted statute should be given primary consideration").

With these principles in mind, the Court now turns to the statutory provisions at issue

in this matter. Section 106(a)(1) of the Code provides, in relevant part, that "sovereign

immunity is abrogated as to a governmental unit to the extent set forth in this section with

respect to . . . [s]ection . . . 544 . . . of this title." 11 U.S.C. § 106(a)(1).

Focusing on the statutory language itself, the Court notes that the Code defines the

term "governmental unit" to include, *inter alia*, the United States or a "department, agency,

or instrumentality of the United States." 11 U.S.C. § 101(27). The instant motion is brought

-14-

by the United States on behalf of one of its agencies, the IRS.  Accordingly, both the United

States and the IRS are "governmental unit[s]" for purposes of § 106(a)(1).

The Code does not define either "sovereign immunity" or "abrogated," nor does it

suggest that the terms should be understood in a particular or narrow sense.  Thus, the Court

looks to the ordinary, common, and contemporary meaning of the terms.  *Black's* defines

"sovereign immunity," in pertinent part, to mean "[a] government's immunity from being

sued in its own courts without its consent."  *Black's Law Dictionary* 753 (7th ed. 1999).

"Immunity," in turn, is defined as "exemption or freedom from something burdensome or

otherwise unpleasant, as a legal obligation."  *Webster's New World College Dictionary* 714

(4th ed. 2008); *see also Black's Law Dictionary, supra*, at 752 (defining "immunity" as

"[a]ny exemption from a duty, liability, or service of process").  "Abrogate" is commonly

understood to mean "to abolish by authoritative, official, or formal action."  *Webster's Third*

*New International Dictionary Unabridged* 6 (1981); *see also Black's Law Dictionary, supra*,

at 6 ("[t]o abolish (a law or custom) by formal or authoritative action; to annul or repeal");

*Webster's New World College Dictionary, supra*, at 4 ("to cancel or repeal by authority;

annul").  These plain-language definitions, combined with the statutory definition of

"governmental unit," clearly and unambiguously communicate congressional intent to

abolish the government's immunity from being sued in bankruptcy causes of action pursuant

to the fifty-nine statutory provisions listed under § 106(a)(1), including § 544.

Given the plain, unambiguous language of the statute, the United States does

not–and, indeed, cannot–dispute that Congress has abrogated sovereign immunity with

respect to the provisions enumerated under § 106(a)(1).  Rather, the United States focuses

-15-

on § 544(b), arguing that sovereign immunity bars the Debtor's claim under that provision

because Illinois law does not allow an unsecured creditor to maintain a fraudulent transfer

action against the United States. Specifically, the United States contends, the Debtor cannot

commence an action under § 5(a)(2) of the Illinois UFTA, made applicable to this case by

11 U.S.C. § 544(b), because § 544 allows the Debtor to avoid only a transfer of an interest

in the Debtor's property that is voidable under applicable law by an unsecured creditor. An

unsecured creditor could not bring an action against the United States under § 5(a)(2) outside

of bankruptcy, the argument goes, because the unsecured creditor would be barred from

doing so by the doctrine of sovereign immunity. Without an unsecured creditor who has the

right to bring such an action, the United States contends, there is no cause of action that the

Debtor can pursue under § 544(b).

The precise issue raised here has been the subject of several other bankruptcy court

decisions, the majority of which have rejected the United States' sovereign immunity

argument. *DBSI*, 2011 WL 607442, at *4; *Menotte v. United States (In re Custom

Contractors, LLC)*, 439 B.R. 544, 548-49 (Bankr. S.D. Fla. 2010); *Tolz v. United States (In

re Brandon Overseas, Inc.)*, Nos. 08-11035-BKC-RBR, 09-01971-RBR, 2010 WL 2812944,

at *4 (Bankr. S.D. Fla. July 16, 2010); *Field v. United States (In re Abatement Envtl. Res.,

Inc.)*, 301 B.R. 824, 828 (Bankr. D. Md. 2002), *rev'd*, 301 B.R. 830 (D. Md. 2003), *aff'd on

other grounds,* 102 Fed. Appx. 272 (4th Cir. 2004); *C.F. Foods*, 265 B.R. at 85-86.[3]

---

[3] *Sharp v. United States (In re SK Foods, L.P.)*, Adv. No. 10-2117-D (Bankr. E.D.
Cal. July 7, 2010), an unpublished decision out of the Bankruptcy Court for the Eastern
District of California, attached to the Debtor's response to the motion as Exhibit A, also
rejects the United States' sovereign immunity argument.

-16-

In *C.F. Foods*, the earliest of those decisions, the trustee filed suit against the IRS under § 544 in order to avoid tax payments made by the debtor-partnership, purportedly for the benefit of the individual partners, on the theory that the payments were fraudulent transfers. *C.F. Foods*, 265 B.R. at 74. In response to a cross motion for summary judgment filed by the trustee, the IRS argued that sovereign immunity precluded the trustee from bringing an action against it under § 544. *Id.* at 82-83. Finding the IRS's argument without merit, the court stated that "[b]y including § 544 in the list of Bankruptcy Code sections set forth in § 106(a), Congress knowingly included state law causes of action within the category of suits to which a sovereign immunity defense could not longer be asserted." *Id.* at 85. Additionally, the court explained that, together with its predecessor section in the Bankruptcy Act (§ 70e), § 544 has "long had the primary effect of granting the trustee the power to avoid transfers under state law provisions concerning fraudulent transfers." *Id.* Finding no ambiguity to § 106(a), the court bolstered its conclusion with policy considerations, stating: "Any recovery by the bankruptcy trustee will benefit *all* of the debtor's creditors, including the IRS. Moreover, enhancement of the rights of others to the detriment of the federal government, particularly in the government's capacity as tax collector, is commonplace, including within the Bankruptcy Code itself." *Id.* at 86 (emphasis in original). In light of the foregoing, the court rejected the IRS's sovereign immunity argument. *Id.*

In addition to other courts, *Custom Contractors,* a case decided over nine years later in the Bankruptcy Court for the Southern District of Florida, adopted the holding of the *C.F. Foods* court. *Customer Contractors*, 439 B.R. at 549. In *Custom Contractors*, the trustee filed a complaint seeking to recover transfers from the debtor-LLC to the IRS on the ground

-17-

that the transfers were made in payment of the debtor's principal's personal tax liability. *Id.* at 545-46. Agreeing with both the reasoning and conclusion set forth in *C.F. Foods*, the court also focused on the "applicable law" referenced in § 544(b). *Id.* at 549. The court noted that "applicable law" generally means state law and explained that "[t]o require a trustee to demonstrate that the United States has waived sovereign immunity in every instance the trustee seeks to rely on state law for the purpose of § 544 would render the general abrogation of the sovereign immunity under § 106 almost meaningless." *Id.*; *see also DSBI*, 2011 WL 607442, at *4-5 (*citing Custom Contractors*). Accordingly, the court found the IRS's interpretation of § 106 untenable. *Custom Contractors*, 439 B.R. at 549.

The Court wholly agrees with *C.F. Foods* and the majority and finds that when it abrogated sovereign immunity as to § 544 causes of action, Congress intended to include those state law causes of action available under § 544(b)(1). The plain, unambiguous language of § 106, the deliberate inclusion of § 544 in § 106(a), and the policy consideration favoring recovery for the benefit of all creditors all support the Court's conclusion.

In an effort to counter *C.F. Foods* and its progeny, the United States offers a number of arguments in support of its position. First, the United States faults the *C.F. Food* court's conclusion, noting that it directly conflicts with the "'general rule . . . that section 544(b) confers upon the trustee no greater rights of avoidance than the creditor would have if it were asserting invalidity on its own behalf.'" (Def. Br. in Supp. of Mot. to Dismiss at 13 (*quoting 5 Collier on Bankruptcy, supra*, § 544.06[3] at 544-24); *see* Adv. Case No. 10-00099, Dkt. No. 70-1).

-18-

The *C.F. Foods* court itself recognized that "[t]he effect of including § 544 in §

106(a) grants the trustee rights that are more broad than those possessed by an unsecured

creditor pursuing a similar state law cause of action." *C.F. Foods*, 265 B.R. at 85. The court

noted, however, that there is precedent for Congress granting such broad rights to a

bankruptcy trustee under § 544. *Id.* By way of example, the court said:

> When enacting the Bankruptcy Code of 1978, the Committee
> Report for § 544 stated that Congress's intent was to retain
> the controversial rule of a 1931 U.S. Supreme Court case,
> *Moore v. Bay*, 284 U.S. 4, 52 S. Ct. 3, 76 L. Ed. 133 (1931),
> which held that a trustee could avoid an entire transfer under
> § 544(b) without regard to the size of the claim of the
> unsecured creditor whose rights and powers the trustee was
> asserting.

*Id.* at 86. The Court adopts the explanation in *C.F. Foods* and, accordingly, rejects the

argument of the United States.

Next, in response to those courts that have found that the United States' statutory

interpretation renders the reference to § 544 in § 106(a)(1) meaningless, the United States

argues that not every subsection of every provision listed under § 106(a)(1) includes a cause

of action against the government or contains a provision that impacts its rights. Specifically,

the United States claims that although subsection 544(b) does not apply to the government

under its interpretation, there are many ways in which subsection 544(a) continues to be

applicable. Thus, the United States contends, its interpretation is reasonable, given the fact

that Congress failed to break down the provisions listed under § 106(a)(1) by subsection,

paragraph, and subparagraph.

-19-

The Court finds this argument unpersuasive. As is evident in numerous provisions of the Code, Congress knows how to specify applicable subsections and paragraphs when it wishes to do so. *See, e.g.,* 11 U.S.C. §§ 104(a) & (b), 348(b), 504(a) & (b), 523, 550(a), 553(a) & (b), 702(a), 724(b), 726(b), 901(a), 1106, 1161. The absence of such subsections and paragraphs in § 106(a)(1) strongly suggests that Congress intended the abrogation of sovereign immunity to apply to all subsections of the provisions listed thereunder. Accepting the United States' argument to the contrary would be to usurp the authority of Congress through an act of judicial legislation, as well as to ignore the plain language of the statute. *See DeKalb Cnty. Div. of Family & Children Servs. v. Platter (In re Platter)*, 140 F.3d 676, 683 (7th Cir. 1998). This the Court will not do.

Additionally, to the extent that some courts state that § 544's listing in § 106(a)(1) reflects Congress's intent to permit a trustee to pierce through sovereign immunity, something that an ordinary creditor would not be able to do, the United States argues that such an inference is essentially negated by § 106(a)(5). That provision states that "[n]othing in this section shall create any substantive claim for relief or cause of action not otherwise existing under this title, the Federal Rules of Bankruptcy Procedure, or nonbankruptcy law." 11 U.S.C. § 106(a)(5).

This argument is also unavailing. Adopting the interpretation of *C.F. Foods* and its progeny does not create a substantive claim for relief or cause of action that does not already exist under Title 11, the Rules, or nonbankruptcy law. Rather, this interpretation recognizes the trustee's power to bring certain state law causes of action, a power that existed under § 70(e) of the Bankruptcy Act of 1898 and was adopted by the Code under § 544(b) in 1978.

-20-

*DBSI*, 2011 WL 607442, at *5 (*citing C.F. Foods*, 265 B.R. at 85-86). "Interpreting §

106(a)(1) as including § 544(b)(1)'s underlying state law causes of action recognizes this

long-held power. It does not create any new substantive cause of action and in no way runs

afoul of § 106(a)(5)." *Id.*; *but see Anton Motors*, 177 B.R. at 64 (suggesting that such an

interpretation violates § 106(a)(5)).

Further, the United States argues that the court in *C.F. Foods* focused on the wrong

statute when it held that § 106(a)(1) unambiguously waives sovereign immunity for claims

under § 544. Rather, the United States claims, the analysis should focus not on § 106(a)(1)

but on both § 544(b) and applicable state law under Illinois's UFTA.

The Court disagrees. The United States' argument defies the canon of statutory

construction that earlier enacted law must yield to more recently enacted statutes. In this

matter, the critical amendment made to § 106(a) was enacted in 1994, *see* Pub. L. No. 103-

394, § 113, 108 Stat. 4106 (1994), subsequent to the enactment of § 544, *see* Act of Nov. 6,

1978, Pub. L. No. 95-598, § 544, 92 Stat. 2596 (1978).[4]  Thus, to the extent of

incompatibility between § 106(a) and § 544(b), § 106(a)–the later enacted

amendment–should be given "primary consideration." *See Hampton*, 47 B.R. at 50.

In addition to the arguments above, the United States urges the Court to diverge from

the majority view and, instead, adopt the reasoning and holdings of three bankruptcy cases

that purportedly support the government's position on the issue at bar. None of the three

decisions persuades the Court to depart from the majority's holding.

---

[4] Amendments made to § 544 following its enactment in 1978 did not effectuate any
relevant changes for purposes of the issue at bar. *See* Pub. L. No. 105-183, § 3(b), 112 Stat.
517 (1998); Pub. L. No. 98-353, § 459, 98 Stat. 333 (1984).

-21-

In *Field v. Montgomery County, Maryland (In re Anton Motors, Inc.)*, 177 B.R. 58 (Bankr. D. Md. 1995), the earliest of the three cases relied upon by the United States, the trustee brought an adversary proceeding against Montgomery County to recover, as fraudulent transfers, tax payments made by the debtor-corporation in satisfaction of personal obligations of one of its corporate officers. *Id.* at 60. After reviewing the purpose and history of § 106(a), including the 1994 amendment that, at the time, had been newly enacted, the court concluded as to legislative intent that "Congress had intended a comprehensive waiver of sovereign immunity for states and the federal government when it originally enacted the Bankruptcy Code in 1978." *Id.* at 63. The amendments, the court said, merely confirmed and clarified the original intent of Congress. *Id.* The court went on to briefly discuss § 544 and then suggested that because an unsecured creditor could not have brought an action against the county under Maryland law, allowing the action to move forward would create a "substantive . . . cause of action not otherwise existing" under Title 11 or nonbankruptcy law in violation of § 106(a)(5). *Id.* at 64. The court offered no analysis of or explanation for its conclusion but, rather, conducted an extensive review of applicable Maryland law. *Id.* at 64-66. The Court respectfully disagrees with both the conclusion and reasoning of *Anton Motors*. As discussed above, the Court finds that construing § 106(a)(1) as including § 544(b)(1)'s underlying state law causes of action does not create a new substantive cause of action and, therefore, is not violative of § 106(a)(5).

The Court is similarly unpersuaded by *Grubbs Construction Co. v. Florida Department of Revenue (In re Grubbs Construction Co.)*, 321 B.R. 346 (Bankr. M.D. Fla. 2005). In *Grubbs*, the Chapter 11 debtor brought an adversary proceeding against the Florida

-22-

Department of Revenue to avoid, as fraudulent transfers, payments that the debtor had previously made on sales and use tax liability of its affiliate. *Id.* at 348. In ultimately concluding that sovereign immunity applied because no unsecured creditor could sue the Florida taxing body under state law, the court focused not on § 106(a)(1) but, rather, on § 544(b). *Id.* at 349-52. In fact, the court devoted only a single paragraph to § 106(a), noting merely that its "purported abrogation of Eleventh Amendment immunity in bankruptcy proceedings . . . is . . . invalid." *Id.* at 349. Because *Grubbs* failed to provide an examination or analysis of § 106(a), the United States' reliance on the case is inapposite.

Similarly, the United States' reliance on *Dillworth v. Ginn (In re Ginn-La St. Lucie Ltd., LLLP)*, Adv. No. 10-2976-PGH (Bankr. S.D. Fla. Dec. 10, 2010), an unpublished decision attached as Exhibit A to the United States' brief in support of its motion, is wholly misplaced. In that case, a trustee asserted claims for the avoidance and recovery of alleged fraudulent transfers against hundreds of defendants, including the University of Michigan. *Ginn* at 2. Concluding that the University could assert sovereign immunity because there was no creditor who could bring suit against it to recover a fraudulent transfer under Florida law, the court provided a detailed and thoughtful analysis. *Id.* at 5-16. That analysis, however, focused exclusively on *state* sovereign immunity, noting at the outset that "[w]hile it is undisputed that § 106(a)'s waiver of *federal* sovereign immunity is valid, the validity of Congress['s] abrogation of *state* sovereign immunity in bankruptcy proceedings pursuant to § 106(a) has been a subject of debate." *Id.* at 4 (emphasis in original).

As a last-ditch effort, the United States urges the Court to consider two provisions of the Internal Revenue Code, which, the United States contends, support its position.

-23-

Specifically, the United States claims that § 7422 and § 7426 of the Internal Revenue Code,

26 U.S.C. §§ 7422, 7426, "confirm that it is extremely unlikely that Congress envisioned"

the use of § 544(b) by trustees to recover tax payments made to the IRS more than two years

before the filing of a bankruptcy petition.[5] (*See* Def. Br. in Supp. of Mot. to Dismiss at 19-

20.)

Notwithstanding the United States' arguments pursuant to these provisions, where

the language of a statute under consideration is clear, courts may not speculate as to the

_____

[5] Section 7422(a) states, in part, as follows:

> No suit or proceeding shall be maintained in any court for the
> recovery of any internal revenue tax alleged to have been
> erroneously or illegally assessed or collected, or of any
> penalty claimed to have been collected without authority, or
> of any sum alleged to have been excessive or in any manner
> wrongfully collected, until a claim for refund or credit has
> been duly filed with the Secretary, according to the provisions
> of law in that regard. . . .

26 U.S.C. § 7422(a).

In turn, § 7426(a), the "wrongful levy" statute of the Internal Revenue Code, provides
a limited waiver of sovereign immunity, permitting third parties to sue the IRS when its
collection activities interfere with their property rights. *See* 26 U.S.C. § 7426(a); *McGinness
v. United States*, 90 F.3d 143, 145 (6th Cir. 1996). The provision reads as follows:

> If a levy has been made on property or property has been sold
> pursuant to a levy, any person (other than the person against
> whom is assessed the tax out of which such levy arose) who
> claims an interest in or lien on such property and that such
> property was wrongfully levied upon may bring a civil action
> against the United States.  Such action may be brought
> without regard to whether such property has been surrendered
> to or sold by the Secretary.

26 U.S.C. § 7426(a).

-24-

intention of the legislature based on the language of unrelated, disparate statutes. *Ill. Dep't of Rev. v. Environdyne Indus., Inc.*, No. 06 C. 4272, 2006 WL 3147696, at *8 (N.D. Ill. Oct. 31, 2006); *see also Riegel v. Medtronic, Inc.*, 552 U.S. 312, 326 (2008) ("It is not our job to speculate upon congressional motives."). The plain language of § 106(a)(1) is clear, precise, unambiguous, and straightforward. Thus, the Court is not at liberty to speculate as to what Congress likely or unlikely envisioned by considering the provisions of the Internal Revenue Code cited by the United States.

In sum, the Court's interpretation of § 106(a)(1) is consistent with the plain language of the provision, the structure of the entire statute, the legislative intent, and the policy considerations involved. In fact, because the plain language of § 106(a)(1) is clear and unambiguous, the Court need look no further than the words in that statute in interpreting it. *Cler v. Ill. Educ. Ass'n,* 423 F.3d 726, 730 (7th Cir. 2005). That Congress may not have anticipated the consequences of enacting § 106(a)(1) with respect to state law claims brought against taxing and other governmental units under § 544(b) is an insufficient reason for the Court to refuse to give effect to the plain meaning of § 106(a)(1). *See Union Bank v. Wolas,* 502 U.S. 151, 158 (1991). When there is "clarity of the statutory text," the party urging an interpretation contrary to the plain meaning of the statute bears an "exceptionally heavy" burden of persuasion. *Patterson v. Shumate*, 504 U.S. 753, 760 (1992). This burden the United States has failed to meet. Accordingly, whether considered as a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction or a Rule 12(c) motion for judgment on the pleadings, the Court finds as a matter of law that § 106(a)(1) abrogates the United States' sovereign immunity on Count IV of the first amended complaint.

-25-

## V. __CONCLUSION__

For the foregoing reasons, the Court denies the motion of defendant United States of America, on behalf of the Internal Revenue Service, to dismiss Count IV of the debtor-plaintiff Equipment Acquisition Resources, Inc.'s first amended complaint. Pursuant to the parties' settlement agreement approved on February 1, 2011, the Court orders the United States of America to pay 37.5 percent of the $2,324,288.00 transfer made to the Internal Revenue Service on October 15, 2007.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rules of Bankruptcy Procedure 5003 and 9021.

**ENTERED:**

DATE: _____6/21/11_____          _____
                                        **John H. Squires**
                                   United States Bankruptcy Judge

cc:     See attached Service List

## SERVICE LIST

### Equipment Acquisition Resources, Inc. v. United States of America, Internal Revenue Service, Sheldon Player, Donna Malone, Mark Anstett, and Martha Anstett
### Adversary No. 10 A 00099

Patrick B. Gushue, Esq.
Peter Sklarew, Esq.
Tax Division, U.S. Dept. of Justice
P.O. Box 55 - Ben Franklin Station
Washington, D.C.  20044

Barry A. Chatz, Esq.
George P. Apostolides, Esq.
Arnstein & Lehr LLP
120 S. Riverside Plaza, Suite 1200
Chicago, IL 60606

Patrick S. Layng, United States Trustee
219 S. Dearborn Street
Suite 873
Chicago, IL 60604